## CLARK *v.* REEDER.

*(Circuit Court, D. West Virginia.* November, 1889.)

1. RESCISSION OF CONTRACTS.

On bill to rescind a contract for the purchase of lands by plaintiff, on the ground of fraud and false representations, it appeared that part of the lands was covered by a patent older than that under which defendant, who was the vendor, claimed, and was claimed adversely to defendant; but defendant agreed to convey with special warranty only, and plaintiff agreed to pay for all lands within the exterior boundaries fixed by a certain survey, except such as were shown by a survey, had at the expense of the vendee, to be held " by adverse title and possession," constituting a better title than defendant's. The bill did not allege that those in possession, claiming adversely to defendant, had a better title than defendant. Plaintiff's attorney, to whom the question of title was by the contract to be submitted, knew of the prior patent, but not of the extent of the interference, and certified that such patent could not, in any event, affect defendant's title, except to a small extent. Both he and defendant's agent supposed that the interlock covered only a small portion of the lands, and plaintiff made the first payment on that supposition, though not prevented from making full investigation. No survey was had by the vendee to ascertain the extent of the interlock. *Held,* that the interlock constituted no ground for rescission, though greater than supposed.

2. SAME.

On cross-bill by defendant, praying for a sale of the lands to pay the purchase money, defendant is entitled to a decree for a sale of the lands for the amount of the price, less the amount paid, and less, also, the value, at the agreed price per acre, of the lands to which others may be shown to have a better right than defendant, with interest.

3. SAME—PRINCIPAL AND AGENT—RATIFICATION.

A contract for the sale of lands was executed by W., "as agent" of the owner, and, being presented to the latter, he approved it, and subsequently received from the vendee the cash payment specified in the contract, without disclaiming, on either occasion, W.'s assumption of agency. *Held,* in a suit brought by the vendee for a rescission of the contract upon the ground of fraud and false representations upon the part of W., that the vendor, having taken the benefit of its provisions, could not dispute W.'s agency, and was as much bound by his fraud or false representations in the making of the contract as if W. had been authorized to make the sale as agent.

In Equity.

This is a suit in equity for the rescission of a contract for the purchase of real estate, upon the ground both of mutual mistake and fraud in respect to the quantity of the lands sold. The contract in question was as follows:

"Agreement made this 29th day of February, 1884, by and between C. C. Watts, of Charleston, W. Va., acting under an agreement in writing between himself and Charles Reeder, of Baltimore, Md., dated the 3d day of February, 1884, and as the agent of said Reeder, of the first part, and H. M. Bell, of Staunton, Va., acting as the agent of E. W. Clark, of Philadelphia, Pa., of the second part, witnesseth: That the party of the first part, acting as aforesaid, has this day sold to the party of the second part, acting as aforesaid, a certain tract and parcel of land lying and being in the counties of Boone, Logan, Wyoming, and Raleigh, in the state of West Virginia, containing 50,-096 acres, be the same more or less, which tract of land was granted by the commonwealth of Virginia to Edward Dillon, by patent bearing date on the 16th day of April, 1796, and is now claimed and owned by the said Charles Reeder by a regular chain of conveyance, the first being a tax-deed for said land executed by the clerk of Wyoming county, dated the 22d day of December, 1857, executed in pursuance of a sale thereof for taxes delinquent thereon, in the name of the heirs of the said Edward Dillon, and the last to the said Reeder from C. C. Cox, dated the 27th day of August, 1870; and for a partic-

ular description of said tract of land reference is had to said patent, upon the following terms and conditions, to-wit: *First.* Said sale of said land is a sale by the acre, and not in gross. *Second.* The party of the second part is to pay for the said land at the rate of one dollar and seventy cents per acre, as follows: Thirty-five thousand dollars to be paid on the day on which James H. Ferguson, a practicing attorney of Charleston, W. Va., shall certify the title of said Reeder to said land to be good and valid, which certificate is to be made within 30 days from this date; twenty-five thousand dollars of which sum is to be paid to the said Reeder, and the residue to said Watts. The balance of the said purchase money is to be paid to said Reeder on the 1st day of June, 1884, or as soon thereafter as the necessary surveying can be done, to ascertain the quantity of land within the bounds of the said patent to which the said Reeder can make good title. It is understood that the party of the second part is satisfied with the survey already made by Wm. T. Sarver of the exterior bounds of said tract of land, and that the surveying to be done is only such as may become necessary to ascertain what lands within said boundary are held by a better title than that of the said Reeder, by reason of adverse title and possession, all of which surveying is to be done at the expense of the said party of the second part. *Third.* When the last of the purchase money is paid, the said Reeder is to convey said land, with covenants of special warranty, to the said E. W. Clark, or to such person or persons as he may direct. *Fourth.* The balance of said purchase money, after the date of the certificate of said Ferguson, is to bear interest until paid. *Fifth.* In addition to the said one 70-100 dollars per acre, the party of the second part is to pay said Reeder one thousand dollars, as provided for in his contract with said Watts. *Sixth.* This contract is subject to the approval of said Reeder, and is to take effect from the date of such approval; but the same shall then be void if the certificate of said Ferguson is not made within the time specified.

"Witness the following signatures the day and year aforesaid.
                                    "C. C. WATTS.
                                    "H. M. BELL, Ag't for E. W. Clark."
"Approved March 4, 1884.    C. REEDER."

The payment of the $35,000 specified in this contract was shown by the following receipt:

"$35,000.    Received March 25th, 1884, of H. M. Bell, agent for E. W. Clark, two drafts on said E. W. Clark, 35 S. 3d St., Philadelphia, dated this day, and payable at sight, one for ten thousand ($10,000) dollars, payable to order of C. C. Watts, and the other for twenty-five thousand ($25,000) dollars, payable to order of Charles Reeder, which said drafts, when paid, will be in full payment of the hand payment provided for in within contract.

   [Signed]                    "C. C. WATTS, Agent for Charles Reeder."

The defendant, Reeder, resisted the claim for rescission, and by cross-bill asked the specific enforcement of the contract. The cause was argued before Mr. Justice HARLAN and Judge JACKSON, district judge, sitting on the circuit, the former holding the court in conformity with the written request of the chief justice, as provided for in section 617 of the Revised Statutes.

*James H. Ferguson* and *Lloyd W. Williams,* for plaintiff, Clark.

*John E. Kenna, C. C. Watts,* and *W. A. Quarrier,* for defendant, Reeder.

HARLAN, Justice. 1. The contract of February 29, 1884, was for the sale by Reeder to Clark of a body of land in this state containing 50,096

acres, more or less, and embraced by a patent from the commonwealth of Virginia to Edward Dillon, issued April 16, 1796; which land, the contract recites, is claimed and owned by Reeder by a regular chain of conveyances, the first being a tax-deed to Ward and Lawson, dated December 22, 1857, and the last a deed from C. C. Cox, dated August 27, 1870.

2. The sale was by the acre, and not in gross,—$1.70 per acre.

3. Reeder was to convey by special warranty, but he did not expect to be paid for any land a better right to which, by adverse title and possession, was shown to be in some one else. This is made plain by various clauses in the contract, namely: (*a*) The land is described as "claimed and owned" by Reeder. (*b*) The cash payment of $35,000 was to be made on the day on which Mr. Ferguson certified the title of Reeder "to be good and valid." (*c*) The balance of the purchase money was to be paid when the quantity of lands, within the exterior bounds of the Dillon patent, to which Reeder could make "good title" was ascertained by a survey. (*d*) The surveying was to ascertain only whether any lands within the exterior boundaries, as established by the Sarver survey, were, "by reason of adverse title and possession," held by "a better title" than that of Reeder.

4. If Mr. Ferguson did not give the required certificate within the time specified, then the contract, by its terms, became void. If he gave it within the time prescribed, the balance of the purchase money, when such balance was ascertained, became payable, with interest, from the date of such certificate, until paid.

I am of opinion that the rights of the parties must be determined upon the theory that, at the date of the contract, Watts had authority, as agent for Reeder, to negotiate for the sale of the lands; though any sale or agreement to sell that he would make was to be subject to the approval of his principal. It is true that at the signing of the contract Watts did not, in fact, have authority, as agent for Reeder, to enter into an agreement for the sale of the lands. He had only an optional right for himself, for a limited period, and upon certain conditions, to buy the lands. But, in making the contract of February 29, 1884, he assumed to act, not only for himself, under his written agreement with Reeder, but as the agent of the latter. And it was so stated in the contract. When, therefore, Reeder approved the contract in question, without qualification, he must be held, as between himself and Clark, to have assented to Watts' assumption of agency. It does not appear that he was informed of what passed between Watts and Bell at or before the contract was signed by them; but he was at liberty to inquire as to such matters, or, when approving the contract, to disclaim the agency of Watts, as well as responsibility for what the latter may have said to Bell or others in respect to the lands. His unqualified approval of the contract was equivalent, so far as the question of agency was concerned, to original authority to Watts to make a sale of the lands, subject to his approval as to terms. If, when the contract of February 29, 1884, was signed, Watts was guilty of any fraud, or made any false representations, that would en-

title Clark to a rescission, if Watts had been, in fact, an agent to sell, then, Reeder, in taking the benefit of the contract, which, on its face, recites Watts' agency, cannot escape responsibility for such fraud or representations upon the ground that Watts was not agent, or because he did not have personal knowledge of what passed between Watts and Bell.

The original bill seeks relief upon the ground of mutual mistake. The last amended and supplemental bill, it was said in argument, proceeds upon the ground of fraud or false representations by Watts, whereby Reeder succeeded in obtaining a contract which Clark would not have made had he known at the outset, or before any money was paid, what the record now discloses. But, upon careful examination of that supplemental bill, it is very doubtful whether it contains any direct, positive averment of fraud or false representations by Watts. The clauses in it that come nearest to an averment of that character are those alleging that, *if* the interference of the Rutter-Etting patent had been known or suspected by Clark, or his agent or attorney, the contract in question would not have been entered into; and—

"*If* the existence of the said Rutter and Etting survey, and the fact that it interfered with and overlapped the said Dillon survey, had in any way come to the knowledge of the said Reeder and Watts, or either of them, before or at the date of the execution of said contract, or *if* they, or either of them, even suspected such interference, their said failure to make the same known to your orator, or to his said agent or counsel, before the execution of said contract, was a fraud upon your orator in law and in fact, no matter whether they, or either of them, so intended it or not."

The supplemental bill seems to have been drawn with the view of finding out whether a fraud had been committed, and does not directly charge fraud, or such representations as would entitle the plaintiff to a rescission.

In the view, however, which I take of the case, it may be assumed that the plaintiff's pleadings sufficiently charge fraud; and it may also be conceded, that, if it were satisfactorily proven that Watts made representations in respect to the interlock of the Rutter-Etting survey and the Dillon survey that were false, and of a material character, the plaintiff would be entitled to a rescission. I am, however, of opinion that the evidence upon that issue does not justify a decree rescinding the contract. The testimony of Mr. Ferguson and Gen. Watts is painfully conflicting, as is often the result where witnesses occupy the position, also, of lawyers in the same case. I have read and reread their depositions, and, while there are ugly conflicts between them as to material matters, I take pleasure in saying that I do not believe that either gentleman has made any statement that he did not at the time believe to be true. Looking at all the evidence, I am of opinion that the charge of fraud—assuming fraud to be sufficiently averred—is not sustained by such evidence as will justify the court in basing a decree upon that charge, or in determining the rights of the parties upon any basis except that furnished by the written documents, and such uncontradicted facts as are competent in connection with those documents.

Undoubtedly the Rutter-Etting patent is older than the Dillon patent. It is equally clear that the former covers most of the Dillon survey, though the extent of the interlock is not made certain by the evidence. But the interlock, however serious, does not, of itself, or by itself, entitle the plaintiff to a decree setting aside the contract.    Every foot of the Dillon survey might be covered by the Rutter-Etting patent, and yet Reeder's title, under the Dillon patent and survey, to the lands in question may be better in law than any other.    The parties agreed to take the exterior boundaries of the Dillon survey, as established by Sarver, and Clark was given the right, by a survey at his own expense, to ascertain what lands within those boundaries were held by a better title than Reeder's, "by reason of adverse title *and possession*."    Now it is perfectly consistent with the allegations of plaintiff's pleadings that no single acre in the Dillon survey is held by a better right than Reeder's, "by reason of adverse title *and possession*."    If Reeder, and those claiming under him, are in possession with a better right in law than any one not in possession, but simply claiming under the Rutter-Etting patent, then it is immaterial, under the contract, that the Rutter-Etting patent is older than the Dillon patent.    I repeat there is no distinct averment in the plaintiff's pleadings that he will lose any of the land "by reason of adverse title and possession" in others.    He avers that there are lands within the Dillon survey which are claimed adversely to Reeder, but he does not allege that the claimants are in possession, under the Rutter-Etting survey, and have the "better" title.

As to the evidence in respect to lands within the Dillon survey that are covered by the Rutter-Etting patent, it falls far short of establishing what is claimed for it by the plaintiff's counsel.    Mr. Ferguson, in his brief, insists that the "purchasers" at the sale by the commissioner, under the forfeiture of the Rutter-Etting survey by Virginia, "or others holding under them, are to a great extent in possession of these lands, claiming them as their own."    On the other hand, Mr. Quarrier, in his brief, insisted that there is no proof in the cause showing, or tending to show, that the Rutter-Etting title is better than the Dillon title, or that the plaintiff has been, or ever will be, injured by reason of the Rutter-Etting title.    Mr. Kenna asserts in his brief that there is neither allegation "nor a scintilla of proof" that the title certified by Mr. Ferguson is not good against the world.

I have examined the proof, and to my surprise, and contrary to the impression I got at the oral argument, it does not appear that any very large part of these lands, outside of what is held by junior patentees in possession, is held by a better title than Reeder's, "by reason of adverse title and possession."    The utmost shown is that most of the Dillon survey is within the lines of the Rutter-Etting survey.    But, as already said, this might be true, and yet Reeder's right be the better in law.    Can it be a sufficient ground to set aside the contract for the plaintiff to show that a large part of the lands in question is within the lines of a patent older than the one under which Reeder claims, and that it is claimed adversely to Reeder; especially when Reeder only agreed to convey with

special warranty, and when the plaintiff agreed to pay for all the lands covered by the Sarver survey, except such as were *shown by a survey had at his expense* to be held "by adverse title *and possession*," constituting a better title than Reeder's? I think not.

There are other weighty considerations in this connection. Whatever fact may be in doubt under the evidence, it appears beyond all question that before Mr. Ferguson, the attorney of the plaintiff, to whom, by the contract, the question of title was submitted, certified Reeder's title to be good, he became aware of the fact, if it was previously unknown to him, that the Rutter-Etting patent was older than the Dillon patent, and covered part of the lands in question. I am satisfied that no one connected with this business knew the full extent of the interlock; but Mr. Ferguson knew that no one's judgment or guess on that subject, without an actual survey, was of any value. If Mr. Watts believed, and so said to him at the time of the investigation of the title, that the Rutter-Etting patent covered less than 10,000 acres of land, it is impossible to suppose that Mr. Ferguson, with all his experience as a lawyer, especially in connection with land titles, relied upon any such expression of belief, or any such statement. This is shown by his certificate. He says:

"The only title which can be found older than the Dillon patent is a grant from the commonwealth of Virginia to Rutter and Etting, dated the 9th day of January, 1796. There is, from the best information I can obtain, a small portion of the Rutter-Etting survey embraced within the Dillon survey. But the Rutter and Etting survey was forfeited long prior to 1837, in the state of Virginia, for the non-payment of taxes thereon, and for the non-entry thereof on the land books of the proper county, and was sold by the commissioner of delinquent and forfeited lands some forty or more years ago. At the time of that sale the taxes on the Dillon survey had always been paid, and for that reason the title to the whole thereof became good and valid, so far as the Rutter and Etting survey is concerned."

After referring to junior claimants of the land, and saying that it was impossible to tell what number of acres they can make good title to, he proceeds:

"But I can say, with almost a perfect certainty, that in view of the possession of the said tract by said Reeder, and those under whom he claims, for nearly 25 years, the number of acres to which these junior claimants can make title will be but small, comparatively.

"I do therefore certify that in my opinion the title of Charles Reeder to the said Dillon survey is good and valid, except to such parts of said tract as may be affected by the claims of the occupants aforesaid, which may or may not be superior to the title of said Reeder."

The basis of the present suit is that the interlock between the Rutter-Etting survey and the Dillon survey is much greater than any one supposed. But evidently Mr. Ferguson did not care, at the time he gave his certificate, how great this interlock was; for he certifies, in effect, that whether it was large or small the title under the Dillon survey, as to the whole of that survey, was good against the Rutter-Etting patent, and that Reeder's title was valid against the older patent, and as to all

the lands except that held by junior occupants. Was he mistaken as to the law of the case as thus presented? If so, neither Reeder nor Watts was responsible therefor. Would a survey have shown the extent of the conflict between the older patent and the Dillon patent? Certainly. But Mr. Ferguson did not deem such survey necessary, believing, for the reason stated in his certificate, that the Rutter-Etting patent did not affect the title under the Dillon survey. It will not do to say that there was not time for such a survey within the 30 days fixed for giving his certificate. His client was not bound to accept a certificate disclosing upon its face a conflict between the Rutter-Etting patent and the Dillon patent, but not disclosing the extent of that conflict; but he was at liberty to accept and act upon a certificate by his attorney, to the effect that such conflict did not affect the value of Reeder's title.

It is suggested that Mr. Clark would have lost the benefit of the contract if Mr. Ferguson had insisted upon a survey to ascertain the extent of the interlock between the Rutter-Etting patent and the Dillon patent before giving his certificate. Surely that is no reason why the court should interfere and annul the contract. If Mr. Clark, by his agent, Mr. Bell, chose to make the cash payment of $35,000 with knowledge that an older patent covered a part of the lands in question, and relying upon the opinion of his attorney that Reeder's title was valid so far as the old patent was concerned, and without reference to the extent of the interlock, he is in no position to have the contract canceled because of such interlock, especially in view of the fact that he agreed to take a deed with special warranty only.

This view is not at all affected by the fact stated by Mr. Bell (who is an attorney, was the agent of Mr. Clark, and was interested in this purchase) that the first information he had as to the Rutter-Etting survey interfering with the Dillon survey was on the 25th of March, 1884, when Watts delivered to him Mr. Ferguson's opinion as to title; that Watts concurred with Mr. Ferguson that the interlock was only as to a small portion of those lands; and that the result of their conversation on the subject was that he, (Bell,) being satisfied as to title, gave to Watts the drafts upon Clark for the amount of the cash payment. At most this only shows that Ferguson and Watts concurred in the view that the interlock between the two patents was only as to a relatively small portion of the land. But that was not a false representation, that entitled the plaintiff to a rescission of the contract. Ferguson, representing Clark, made his investigation of title independently of the question as to the extent of the conflict between the two patents of 1796. Nothing was done to prevent him from making the fullest investigation. If, in order to enable Clark to get the benefit of what was supposed at the time to be a beneficial contract, he chose, instead of making or requiring such investigation, to make the question of title rest upon his belief and opinion as to the validity of the Dillon title as against the older patent, by reason of the facts stated in his certificate, and if Mr. Clark's agent, Mr. Bell, with the contract before him, accepted the certificate as prepared, and made the cash payment, then the

interlock between the Rutter-Etting survey and the Dillon survey constitutes no ground for annulling the contract.

I am of opinion that the prayer for a rescission of the contract ought not to be granted.

The next question to be considered is whether Reeder is entitled to the relief asked in his cross-bill; namely, a decree for the sale of the lands in question to raise such sum as may be due him as the balance of the purchase money. If the views already expressed are sound, a decree in favor of the defendant, Reeder, on his cross-bill, will necessarily follow. The amount apparently due him from the plaintiff is $85,-163.20, (50,096 acres at $1.70 per acre,) less $35,000 already paid, and less also the value of such lands (at the rate of $1.70 per acre) as may be shown to be within the exterior boundaries of the Dillon survey, fixed by Sarver, and to which there is shown to be a better title than Reeder's "by reason of adverse title and possession." The lands thus to be excluded from the computation of the balance of the purchase money, and excepted from any decree of sale, include not only such as are in possession of junior patentees, holding by a better right than Reeder, but such lands as are within both the Dillon and Rutter-Etting surveys, and are in the possession of others having title under the Rutter-Etting.patent, and who, by reason of such title and possession, have a better right than Reeder. For the balance remaining, with interest thereon from the date of Mr. Ferguson's certificate, Reeder will be entitled to a decree for the sale of the lands.

In view of the uncertainty which has prevailed as to whether the quantity of lands to be excluded from the computation as to the balance due Reeder would be ascertained by institution of actions of ejectment or in some other mode, it would not be just to proceed to a final decree upon the evidence now before the court. The case should go to a competent master, under whose directions a survey should be had, at Clark's election, as well as at his expense, to ascertain who, if any persons, are in possession of lands within the Dillon survey, as run by Sarver, claiming by title adverse to that of Reeder, and whether such claim by adverse title and possession gives a better right than Reeder has to the lands, or any of them, embraced in the contract of sale. In the event a survey be had, the parties should be given a reasonable time to make additional proof upon the above point, and upon such proof, and the evidence now in the record, so far as competent, the report of the master should be based.

JACKSON, J. I concur in the conclusions of Justice HARLAN.